on our last day of this very cold week. I hope you all are doing well this morning. We're happy to have you here with us today. Just before we get started, we're going to do a quick review of our timing system. I'm sure you're all familiar with it, but just as a reminder, when the yellow light goes on, you have two minutes left. When the red light goes on, your time is up. We ask that you please finish what you're doing at that point in time. Unless we ask you a question and if that happens, please go ahead and answer the question. We want to hear your answer and so we'll ask that you do that. All right, and with that, we're going to begin today with a case of United States v. James. Mr. Cummings, thank you. Good morning, Your Honors and Counsel. May it please the Court, Jonas Cummings, arguing on behalf of Alphonso James. The sentencing guidelines call for an enhancement if a defendant used or possessed a firearm in connection with a secondary felony. The key phrase here, in connection with, is expansive, but it imposes important limits. And helpfully, for our purposes, the Supreme Court has made those limits especially clear in the context of drug trafficking. In Smith v. United States, the Supreme Court interpreted the synonymous phrase, in relation to, and said that, at a minimum, it requires that a gun must serve a purpose or effect with respect to a drug trafficking crime and, relatedly, the gun must not be present just because of an accident or coincidence. That is what the Supreme Court meant when it said the gun at least must facilitate or potentially facilitate a drug trafficking offense. Contrary to these limits, Note 14b automatically triggers the enhancement any time a gun is in close proximity to drugs, even if that proximity results from accident or coincidence. For example, if an unloaded hunting rifle were tucked away in a closet, 10 feet away from some drugs, the enhancement would apply automatically, regardless of that accidental fact. So, but let me ask you a question. As I understand the facts, and maybe I'm missing something, so you can let me know. Mr. James, the gun was found in a bag that Mr. James was carrying when he was engaged in a hand-to-hand transaction in drugs. Is that right? The district court said there was an apparent hand-to-hand. I don't necessarily agree that that was a finding by preponderance that was a hand-to-hand, but we could assume that that's true. Okay. Why then isn't, I mean, given what we've said in our precedent about guns facilitating drug trafficking and being tools of the trade, if it's literally on his body at the time of the transaction, why do we need to get into the meaning of the application note? Why isn't it clear under the in-connection with language by itself that it satisfies that, or at least that the district court did not err in concluding that? So, a couple of points. One, I think, is the district court's own words were it relied on the close proximity rule from the commentary to uphold the enhancement. It didn't actually quite find that the gun was in the bag during the gas station interaction. It noted the gun was found in the bag when officers searched the back seat of the car. It didn't find that the gun was necessarily in the bag during that alleged hand-to-hand transaction, so we don't really know that he was carrying the gun simultaneously. But Mr. James admitted that he possessed the gun. Did he not? Yes, that's correct, Your Honor. He pleads guilty to possession of a firearm by a felon. That just means that on that date, he at least knowingly had constructive possession of the firearm. Right, but Ms. Blunt testified at the hearing that the gun was not hers. Correct, and what's interesting is when the district court was going through the testimony in terms of what it credited and did not credit, it didn't actually credit that specific aspect of her testimony. It credited a different aspect, which was that she said there was no fentanyl in the car before he got in. The district court didn't actually specifically credit that aspect of his testimony, and the key pages are on 55 and 56 of the sentencing transcript. So your argument, as I understand it, is that the finding by the district court that necessitated the guideline was because the drugs and the gun were found near one another in the car, not because the gun was used in order to facilitate a drug transaction earlier. Precisely, that is what the court's application of the enhancement ultimately came to rest upon, was the gun being in one bag, the drugs being in a different bag in very close proximity to each other in the backseat. Okay. And the court's precise words were, this is page 56, lines 21 through 24, it was it referring to the bag of fentanyl. In this course, that's an estimation in very close proximity to the firearm. Right. So there was no need for the court to go to the application note. No, there was. That's showing it's relying on the close proximity rule in the application note, because right before it said that, it was saying, I agree with the counsel that it's ambiguous and I've got to go to the commentary. But if we go to the application note, though, I mean, the way we read the application note, if the drugs and the guns are in close proximity to one another, then the guideline application would apply then, wouldn't it? Well, this, are you, that's kind of an allegation. It seems to me your best argument would be that the guideline itself is not ambiguous and it requires that there have to be some relationship between the gun and the drugs in order for the guideline enhancement to apply. I think that's also true. I mean, the position he took below was one, but I think that it could be unambiguous. I don't disagree with that. But actually, either way, at a minimum, it requires a relationship between the gun and the drugs, regardless of whether or not . . . Can I ask you a question? Because under the facts, how I understand it, the district court did credit Ms. Blunt's testimony that she saw Mr. James with the Crown Royal bag that he had in his pocket. He took it out and that's what had the fentanyl in it, which was a lot of fentanyl for purposes of trafficking, and that that bag is what was found in the rear seat of the vehicle near, obviously, the gun. Yes, the judge credited Ms. Blunt's testimony about the fentanyl being brought into the car by Mr. James. We alluded to this in the reply brief. The findings of fact don't preclude that the gun was already in the car and Mr. James didn't know about it when he got in the car. Right, except for the fact that he admitted that the gun was his. When he pleads guilty . . . And Ms. Blunt testified that the gun was not hers. Well, so a couple of things. So, yeah, the gun belongs to Mr. James, which shows he at least knowingly had constructive possession sometime on that date. That's not inconsistent with him coincidentally learning that the gun, for example, was in the car when the driver maybe said, hey, there's a gun in the back seat, you better hide it because we're getting pulled over from the cops, which would be consistent with both his guilty plea and coincidental proximity between the gun and the drugs only as the car was being pulled over. Another potential . . . this court has said that under the in connection with requirement, a defendant must be aware of the gun's presence. So, for example, one of the problems with Note 14b, which was applied here, is it sweeps in incidents when the defendant's not aware of the gun's proximity. In paragraph 10 of the PSR, Mr. James said in a post-Miranda statement that he did not put the gun in the bag. That's not inconsistent with his guilty plea. He could have had knowing constructive possession on that date, which means he woke up that day and he knew he owned this firearm, and yet it could also be true that he didn't know the precise location of the gun if someone else had put it in the bag. So, I understand what you're saying about the court's reliance on the in proximity application note, but it seemed to me like the court sort of made like an alternative or a double ruling in that it seemed to me like it was also saying that it was relying on the factual basis for Mr. James' plea, and from that factual basis, it specifically said it considered the arresting officer's observations, meaning that James did what appeared to be a hand-to-hand drug transaction while he was wearing this small body strap bag that was later found to include the gun. And so, first of all, I guess I should ask you, so two questions. First of all, I should ask you if you think that is a fair reading, and if not, then why not? And if it is a fair reading, then, so it's really three questions, if it is a fair reading, then why do we get to the in proximity part of your argument? So, well, I just don't agree. I think that the court did not find that the gun was in the bag during the hand-to-hand transaction. But the second thing is the court's own words show that it relied on the close proximity. I can't say that it did not make an alternative finding because it did not say that the gun facilitated or potentially facilitated the drug trafficking offense. Not that it has to use those magic words, but it didn't say anything to that effect either. It didn't say that it emboldened him, that he had the gun to protect the drug stash or to protect drugs. It went to the application note because it was following the, what the parties were arguing over, which is no 14B in that it didn't make a facilitation finding. So I hear what you're saying, but here's the thing that doesn't make sense to me. Why even mention the fact of the hand-to-hand drug transaction while he's carrying the bag that later is found to have the gun in it, if that's not part of his reasoning for applying the enhancement? You see what I'm saying? So I'll say two things with regard to that. So I think the hand-to-hand goes to identifying the nature of the other crime as a drug trafficking crime. That kind of goes, which is where no 14B comes in. It says if the other crime is a drug trafficking crime, apply this automatic close proximity rule. That's the relevance of saying, and there was also a hand-to-hand transaction going on in the parking lot, just to identify the other thing. But I guess what I'm saying is while he's, the part that he says is while he's carrying the bag that's later found to include the handgun. That's what I'm... So I think that's also to support the notion that the gun did belong to Mr. James, but it doesn't exclude accident or coincidence. So even accepting the court's findings, let's assume the court found all the facts as this court is reading it. Even the court's fact findings don't exclude the possibility of accident or coincidence. And that is consistent with the court's reliance on that 14B, which doesn't exclude accidents or coincidences. Right, but there was testimony that, I can't remember who testified to it. I think it was the officer that Mr. James' fingerprints were on the gun and as well as the fingerprints of three other individuals. Yeah, DNA, there was a mixture of four, including Mr. James, which shows that at some point on that date, or before, sometime on or before that date, Mr. James had touched the gun. But he also told officers in the Post-Miranda Statement that he did not put the gun in the bag. And that's not at all inconsistent with admitting that he also had at least constructive possession of that firearm on that date. All right, thank you. Thank you. And you've reserved five minutes. All right, is it Ms. Gershow? Good morning, Your Honors, and may it please the Court, all of Gershow on behalf of the United States. I agree with this Court that there is no need for the Court to reach the issue of whether the District Court could defer to the commentary in this case because the District Court's factual findings make clear that Mr. James possessed this firearm in connection with a drug trafficking offense, regardless of how the term in connection with is interpreted. And I would specifically like to point the Court's attention to page 57 of the sentencing transcript. The Court said, the Court adopted factual statements and guideline applications contained in the pre-sentence report. As for the controverted statements, guideline applications, the Court has ruled on that based upon the evidence and testimony as presented today, here today, adopts the position of the probation officer as stated in the addendum. So then we have to look at the addendum to see what the probation officer's position was. That's on page 33 of the PSR. And it says, in this case, James was wearing the crossbody bag which contained the firearm during the drug transactions. The connection between the firearm and drugs appears undeniable as a means of protection in a potentially dangerous situation. That is the District Court's factual finding. That supports the in connection with enhancement under any definition of in connection. That means that if drugs, if the drugs are near the gun, that's enough to apply the enhancement? Well, the District Court, the, I think, yes, Your Honor. But more importantly here is that the court, the probation officer's position was that he possessed that firearm as a means of protecting the drugs in a potentially dangerous situation. This Court's precedent And the District Court made that finding? Made it because it adopted the position of the probation officer as set forth in the addendum. And this Court's precedent is clear that guns have the potential to facilitate a offense, a drug offense, when they are But you wouldn't suggest that if the drugs are just near the gun, that would be enough in order for the enhancement to apply, would you? In a drug trafficking offense, yes, I would, Your Honor. As long as the drugs are near, what if the gun is there, as he indicates, by accident and it wasn't used, it wasn't involved in or related to the drug transaction? Well, this Court has said that the, a firearm, noting the dangerousness inherent in drug trafficking offenses, a firearm always has the potential to facilitate a drug trafficking offense when it is in close proximity to drugs. And that's been recognized time and time again. Let me give you an example. Let's say that a defendant, he's a felon, he can't possess a firearm, he possesses one anyway, he's a drug dealer, he's walking down the street, he doesn't have any drugs with him at that time. He runs into his supplier, his supplier says, great, I'm glad I found you, I've got your, I've got your share of the drugs. He then gives the defendant a trafficking quantity of drugs, police observe that transaction, they pull him over, they search him, they find the gun. Even though he, you would say, well, it was coincidental that he possessed the firearm, because that wasn't his intent when he said across that day. Once that firearm was in close proximity to the drugs, both in his possession, instead of the police pulling him over, somebody had tried to rob him of those drugs, that firearm would be there to protect his drug. Let me ask you a question. What if the gun had been in the car during the drug transaction? This court has held that that still satisfies the, in connection with the requirement, because it could embolden him in the transaction. How's that possible though? He's outside the car, he's over, you know, away from the car, he's, the car door is closed, how does that embolden him? He's going to run over to the car, open it up and get the gun while the other guy is in another car? I mean, that doesn't seem to make a lot of sense to me. There's cases where they've said a gun in a car across the street from a defendant is in connection with a drug transaction, because they're, again, they're, and he's also, he transported, assuming that the drug is, the gun is in the car and that's how he got there. He had that gun in the car with him when he was going through the drug transaction. He chose to bring that gun in order to... How do, how do, how do we know that though? Because the, the gun was found in, what, in the Crown Royal bag? Yeah, yeah. In this case, it was found in the crossbody bag that he was wearing during the drug transaction. Okay. The fentanyl was found in the Crown Royal bag that he also brought into the car with him when he went to traffic... And that's the one that Ms. Blunt testified to that he took out of his pocket. The Crown Royal bag? Right. And then it was put behind the rear passenger seat. Yes. So, so we know for sure, the court knows for sure that the gun was found in the, what do you call it, the crossbody bag during the transaction itself and not after he got in the car? That was the factual finding that the district court made. It got completely supportable by the testimony at the trial that said, or at the sentencing, I'm sorry, where Ms. Blunt testified that she didn't see the gun when he got into the car and the gun was not in the car when she, before he got into the car. So where was the gun? The most logical inference is it was in the crossbody bag. And then the district court adopted the fact, the position of the probation office, that it was in the crossbody bag when he engaged in the hand-to-hand transaction. But even, let's assume it wasn't in the crossbody bag when he engaged in the hand-to-hand drug transaction. When the detectives pulled him over, he was reaching into the back of the car where he knew that firearm and that fentanyl was. When the detectives came to the car, he didn't, but he could have shot at the officers. And the body cam footage, it was chambered. There was a bullet in the chamber that he was reaching towards when the detectives were going. And the point of this guideline is to increase a sentence for a defendant whose possession of a firearm is more culpable. And possessing a loaded, cocked Glock in close proximity to a trafficking quantity of fentanyl is the exact kind of conduct that increases the danger of a drug transaction, of drug trafficking, and merits this enhancement under the plain meaning of the term in connection with. Now, I'd like to back up and talk about what my friend said about Smith and what Smith requires. Well, the Supreme Court's decision in Smith when it said it excludes accidental and coincidental possession, that was dicta to that case. And I understand the Supreme Court dicta carries a lot of weight, but this court rejected importing that dicta into the definition of in connection with after the Smith case was decided. So this court has already held that in connection with can exclude accidental and coincidental conduct post Smith. And so it's different than the Third Circuit, which said that it could not exclude, that it could not exclude accidental and coincidental conduct. And that difference in circuit authority is what creates the ambiguity in the term in connection with. It also creates the zone of ambiguity and shows why the close proximity standard falls within the scope of the in connection with requirement. I know this court had asked a question about whether Perez created a rebuttable presumption. It is the United States' position that it does not create a rebuttable presumption, but that that's not needed because the close proximity standard falls in line with the 11th Circuit's precedent. I'd also like to talk about what it means to be in close proximity. Close proximity in this court's decision by Dillow said it requires both physical closeness and accessibility. So in cases in which even if the firearm is in close proximity to the drugs, that doesn't necessarily mean that the close, that the standard would be met if that firearm is not accessible to the defendant to use. It also has the limiting principle of 14e that both the firearm and the drug trafficking offense have to be in the defendant's relevant conduct. And so therefore, if for instance a defendant is walking down the street with a gun and the person walking next to him unbeknownst to him and not a conspirator of his has drugs and they're stopped together and their guns are found in one defendant's pocket and drugs in the other, that wouldn't qualify the defendant who possessed the firearm for this because the other defendant's possession of the drugs would not be within his relevant conduct. Well, unless the Court has any further questions, I would ask that it affirm Mr. James's sentence. Okay, may I ask a question? Of course. So I just wanted to ask a question. So if the Okay. And Mr. James was just a regular passenger in the car because Ms. Blunt did admit that she had marijuana and mushrooms in the car. I think Perkins had too. But he had the gun. Are you saying that the application would not have any, you would not be charging him with an enhancement? Correct. We didn't in this case. I mean, we did charge him with the enhancement, but we didn't do it based on the, we did it based on the fentanyl. We didn't do it. I understand because the fentanyl was on him, but that's, I just want to clarify. Okay. Thank you. Thank you. All right. Thank you, counsel. Mr. Cummings. Thank you, your honors. I'll make a couple of related points. First, my colleague says that the no accident, no coincidence aspect of Smith was simply dicta. But the court in Martinez said that when the commentary to the guideline adopted the facilitator potential to facilitate standard, which it did in amendment 691, the court in Martinez said that when you transplant a term from one source to a new source, it brings the old soil with it. And part of the soil of facilitator potential to facilitate is the gun can't be present by accident or coincidence. That's what the Supreme Court meant by that phrase. And then, so relating that back now to the facts about accident or coincidence, the court's fact findings and the addendum to the PSR still don't exclude the possibility of an accidental or coincidental gun being in the bag. And again, so in paragraph 10 of the PSR, Mr. James said in a post-Miranda statement that he did not put the gun in the bag. And that can still be consistent with the fact that he pleaded guilty to knowing possession of a firearm that day. And the court said in a recent unpublished decision, United States v. Green, that the facilitation or potential to facilitate standard requires awareness of the gun, awareness of the gun being present. So he could have been in constructive possession of the gun on that date and not have known its precise location, including its precise location in the bag. And that's consistent with what he said to officers in a post-Miranda statement. So that just goes to show one example of an accident or coincidence that wasn't excluded or ruled out by the fact findings. And it reinforces that the court relied on application note 14B. It said it was going to the commentary. It cited the close proximity standard in doing so. It did not make a finding of facilitation or potential facilitation or anything to that same effect. And we know from the headings of the commentary itself, by its very nature, if the other crime is a drug trafficking crime, you just go to note 14B and you rely upon that. You don't go to note 14A or a different standard. The headings of the commentary say, if the other crime is a drug trafficking crime, here's the rule. And that rule is, if it's in mere proximity, enhancement applies. And then a third point, that is not consistent with circuit precedent. There are about 13 or 14 published decisions on in connection with. Not a single one says that accident or coincidence is irrelevant to the analysis. But note 14B makes it irrelevant to the analysis. And so circuit precedent, it does not align with note 14B. Note 14B goes further than anything the court has said before. So I think there are basically two questions is, can we say that a gun will never be in close proximity to drugs or trafficking items by accident or coincidence? And can we say that a gun in proximity to drugs always has a purpose or effect? And if the answer to either of those questions is no, then note 14B is an unreasonable interpretation of the guideline. And because the court relied on note 14B, we asked the court to vacate and remain for further fact findings under the proper standard. And if the court has any further questions for me, I'd be happy to answer those. Thank you, counsel. Thank you, Your Honor. All right. Our next case today is Cunningham.